**SHORTRIDGE et al.**

v.

**OHIO DEPARTMENT OF PUBLIC SAFETY et al.**

Court of Claims of Ohio.

No. 96–12170.

Decided Dec. 16, 1997.

*Stuart F. Cubbon,* for plaintiffs.

*Betty D. Montgomery,* Attorney General, and *Michael J. Valentine,* Assistant Attorney General, for defendant.

FRED J. SHOEMAKER, Judge.

Plaintiffs filed a complaint against defendants, Ohio Department of Public Safety and Ohio Department of Transportation ("ODOT"). Plaintiffs agreed to dismiss ODOT as a party and proceeded solely against the Ohio State Highway Patrol ("OSHP"). Plaintiffs alleged that OSHP was negligent and that its negligence was a proximate cause of a two-vehicle accident that resulted in injuries to plaintiff Nancy L. Shortridge. OSHP has denied liability.

The court held a trial upon the sole issue of liability. After carefully considering all the evidence, including the exhibits and depositions admitted into evidence, the court finds that the facts and issues hereinafter set forth in this decision were established by a preponderance of the evidence and are determinative of plaintiffs' claims. The court hereby renders the following decision.

The accident underlying plaintiffs' claims occurred in Erie County at the intersection of State Route 4 ("S.R.4"), a through highway that runs north and south, and Strub Road, a county road that runs east and west.

On November 15, 1995, at approximately 9:39 a.m., Nancy L. Shortridge was driving her 1991 Mercury Topaz west on Strub Road at approximately thirty-five mph. The weather was clear and dry. Unfortunately, she failed to stop her vehicle prior to entering the intersection on Strub Road and S.R. 4. As a result,

Shortridge's vehicle collided with the left side of a 1994 Dodge Caravan, which was being driven south on S.R. 4 by Heather Preston.

At the time of the accident, the stop sign that was ordinarily located on the northeast corner of the intersection and facing oncoming westbound traffic on Strub Road was placed on the ground leaning against a four-foot post. The sign had been knocked down as a result of an earlier accident at approximately 8:35 a.m. that same morning. One of the vehicles involved in the earlier accident struck and broke the post that had held up the stop sign, leaving approximately four feet of the post standing in the ground.

At approximately 8:36 a.m., Trooper William T. Maners of the OSHP was dispatched to the scene of the first accident and arrived approximately at 8:39 a.m. Trooper Maners initially assisted with the accident and directed traffic. Trooper Maners placed the stop sign against the broken post facing east so that it would face westbound traffic on Strub Road. Trooper Maners had parked his patrol car approximately one car length away from the stop sign with its red overhead lights on. At some point, ODOT was informed of the damage to the sign.

At approximately 9:00 a.m., Robert Stower, an ODOT employee, was advised to proceed to the accident scene by ODOT's Milan Garage. Upon arriving at the scene, Stower parked his ODOT truck on the north side of Strub Road, east of S.R. 4, in the parking lot of a lounge located on the corner. Stower's truck was facing east with its headlights and overhead yellow strobe lights on. Stower exited his truck and walked over to the broken post that had held the stop sign in order to determine what materials would be needed to make the necessary repairs. During that time, Trooper Maners was seated in his vehicle, preparing a report pertaining to the first accident that had occurred. A wrecker had also arrived and was parked in the same area with its overhead yellow flashing lights on. As Stower was walking back to his truck to obtain the materials to repair the sign, he noticed that Shortridge's vehicle was not slowing down as she approached the intersection. He then heard the collision.

Approximately one-tenth of a mile east of the intersection, Shortridge passed a "stop ahead" sign. Since motorists on S.R. 4 had the right-of-way through the intersection, there were no stop signs or other traffic control devices to stop traffic traveling north and south on S.R. 4.

■ In order for plaintiffs to prevail upon their claim of negligence, they must prove by a preponderance of the evidence that defendant owed them a duty, that it breached that duty, and that the breach proximately caused their injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469–470.

 OSHP has a statutory duty to report and investigate traffic crashes. R.C. 5503.02. In order to provide guidance governing OSHP activities connected with or related to traffic crashes, the Division of Public Safety has adopted Policy 9–200.01, an administrative policy for traffic crash investigation. Section II–B of the policy requires the first officer on the scene to take charge and be responsible for administering emergency medical care and summoning whatever assistance is necessary to maintain a safe, orderly traffic flow. Section II–B further states:

"Maintaining a safe, orderly traffic flow may require the removal from the roadway of vehicles, persons, and debris that are not crucial to the investigation. Vehicles involved in minor property damage crashes may be removed immediately from the roadway to restore normal traffic flow. All efforts are to be made to report or correct any hazardous conditions that may exist at the crash scene. In every event the appropriate agency having responsibility to handle that condition should be notified immediately."

Therefore, the court finds that the OSHP had a duty to maintain the intersection at S.R. 4 and Strub Road in a safe manner until the first accident scene was cleared and a stop sign could be reerected.

 Plaintiffs argue that this duty required Trooper Maners to immediately notify ODOT of the downed sign, direct traffic, and/or place warning flares on the roadway. Plaintiffs argue that Trooper Maners did not do everything necessary to safely maintain the intersection and, as a proximate result, Shortridge was injured in a traffic accident.

Contrary to plaintiffs' assertions, the record is clear that Trooper Maners acted responsibly and in accordance with OSHP's policies regarding the safe maintenance of the intersection. Upon arriving at the first accident scene at approximately 8:39 a.m., he immediately assisted with the first accident to assess the injury situation. Trooper Maners had his overhead lights turned on. He propped the broken stop sign against the remaining portion of the post and directed traffic for a short time. Within twenty to thirty minutes of the accident, he notified ODOT. At approximately 9:00 a.m., Perkins Township Police Sgt. Anders arrived and assisted in directing traffic. Around 9:15 a.m., Sgt. Anders left the scene to respond to another call. An ODOT highway worker, Robert Stower, received a call around 9:00 a.m. to proceed to the accident scene to replace the sign. Within an hour of the first accident, Stower arrived on the scene to begin replacing the stop sign. Trooper Maners was sitting in his patrol car, making out an accident report. However, before the sign was repaired or replaced, Shortridge went through the intersection without stopping.

It is important to note that during the hour between the first and second accident, traffic had been flowing smoothly through the intersection and there

were no problems with westbound drivers seeing either the stop sign or the approaching intersection.

The court finds that Trooper Maners notified the appropriate agency about the damaged stop sign within a reasonable time. In addition, it was within his discretion whether to place cones on the highway and/or direct traffic.

■ Alternatively, even if OSHP should have notified ODOT of the stop sign sooner, the facts of this case would not warrant a judgment for plaintiffs because R.C. 4511.41 sets forth the general rule for two vehicles approaching an intersection:

"(A) When two vehicles, including any trackless trolley or streetcar, approach or enter an intersection from different streets or highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

"(B) The right-of-way rule declared in division (A) of this section is modified at through highways and otherwise as stated in Chapter 4511. of the Revised Code."

■ Furthermore, the common law of Ohio imposes a duty of reasonable care upon motorists that includes the responsibility to observe the environment in which one is driving. See, *e.g.*, *Hubner v. Sigall* (1988), 47 Ohio App.3d 15, at 17, 546 N.E.2d 1337, at 1339–1340.

Accordingly, the court finds that Shortridge had a duty to look ahead of her vehicle toward the intersection and a duty to yield the right-of-way to southbound motorists on S.R. 4. Shortridge's failure to comply with these duties was a proximate cause of the accident. She drove through the intersection without paying attention to the traffic conditions.

Assuming *arguendo* that plaintiffs proved that OSHP was negligent and its negligence was a proximate cause of this accident, the court finds that the overwhelming weight of the evidence proves that Shortridge's own negligence was greater than any possible negligence on the part of OSHP.

Judgment shall be rendered in favor of defendant OSHP.

*Judgment for defendant.*

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.